Submitted on brief at Pendleton May 2, reversed and remanded July 26, 1921.

## PACIFIC LIVESTOCK CO. *v.* BALCOMBE et al.

## PACIFIC LIVESTOCK CO. and CLERF LAND & LIVESTOCK CO. *v.* BALCOMBE et al.

(199 Pac. 587.)

**Waters and Watercourses—State Water Board Held Proper Tribunal for Determination of Water Rights.**

1. Where, in a suit to adjudicate rights in the waters of a number of streams, it appeared that the topography of the country was somewhat peculiar, and that the measurements of the streams taken by different parties were taken at different times and places and were conflicting and unsatisfactory, and that any decree that might be rendered would probably affect the rights of persons not

parties, judgment reversed for new trial under Section 557, Or. L., with directions to transfer the suit to the state water board for determination under Section 5731 et seq.

From Harney: DALTON BIGGS, Judge.

In Banc.

These cases were consolidated for trial, and one decree entered in both cases in favor of plaintiffs, who being dissatisfied with the findings and decree have appealed.

In the first case the Pacific Livestock Company, as plaintiff, sued to protect its rights in the waters of certain creeks on the east side of Stein's Mountains, known as Mosquito Creek, McCornack Creek or McCoy Creek, Summit Creek or Castle Rock Creek, Mann Creek, House Creek, Spring Creek and Trail Creek. In the second case the Pacific Livestock Company and the Clerf Land & Livestock Company sued to protect their rights in the waters of Willow Creek, likewise situated east of Stein's Mountains, in which each of the plaintiffs claimed a half interest.

The testimony in these two cases was taken together. The general facts out of which the cases arise are substantially these: For many years the plaintiff, Pacific Livestock Company, has been the owner of a large tract of land lying along the east side of Stein's Mountains. These properties consist of separate fields known as Mann Lake field, containing about 3,000 acres; Devon field, comprising about 4,300 acres; Miranda field, about 100 acres; and the Mosquito Creek field, about 3,000 acres, making about 10,900 acres in all. Adjoining this property to the south, the Clerf Land & Livestock Company, and its predecessor, John Devine, have likewise for many years owned land generally known as the Alvord Ranch. Quite a number of small creeks flow from

Stein's Mountains on to these properties, and so far as they are involved in these cases they are known as Trail Creek, Spring Creek, House Creek, Mann Lake Creek, Summit or Castle Rock Creek, Mc-Cornack or McCoy Creek, Mosquito Creek and Willow Creek. Farther south, other creeks flow upon the Alvord Ranch, but they are not involved in these cases, nor has the plaintiff, Pacific Livestock Company, any interest therein. For more than twenty years prior to the commencement of these suits, the Pacific Livestock Company, by dams and ditches, has taken and diverted all of the waters of these creeks on to its properties, with the exception of one half of the water of Willow Creek, which for some length of time, has been diverted on to the Alvord Ranch, and the same has been used for the irrigation thereof, including hay land, pasture land, alfalfa land, grain land, orchards and gardens. It is claimed that by means of these creeks about 3,000 acres of land of the Pacific Livestock Company have been irrigated for one or the other of these purposes. It also has many thousands of acres of land under the flow of its ditches which could be irrigated if there were a sufficient amount of water to irrigate the same. Any surplus water during haying or when not needed on other land has been used upon that land and has produced some grass thereon, but any surplus for it is so infrequent that the balance of the land has not been cleared or systematically irrigated. If more water were available the plaintiffs could and would have irrigated large additional tracts of land, which they owned, and which lie under the flow of their ditches. The plaintiffs continued in the undisputed use and enjoyment of this water until the year 1912.

Plaintiffs state where there is one peculiarity of the case, in that these various streams are all used indiscriminately on the various properties of the Pacific Livestock Company, with the exception of Willow Creek, which is only used by it on Mosquito Creek field. The flow of the streams is very erratic, differing largely from day to day, and no particular constant flow can be relied upon from any of them. In the nature of things, it is impossible to measure the water in terms of constant flow, and plaintiffs therefore contend that as they have in fact diverted and beneficially used all of the water of these streams, and even with all of it are unable to irrigate large portions of their holdings, they should be held to be the owners of all of the waters of these streams.

Plaintiffs assert that in February, 1912, the defendants filed applications with the state engineer for the appropriation of all the waters of these creeks. Defendants filed on certain public land in that vicinity, aggregating about 2,720 acres. A corporation was formed known as the Buena Vista Power & Irrigation Company. From its answer it would appear that it intended to irrigate about 4,960 acres in addition to the individual holdings of defendants, making 7,680 acres in all. Besides this the corporation, according to its answer, claimed that a large tract of sagebrush land situated a little lower than the surrounding plains constituted three separate reservoir sites, having a carrying capacity of 6,050 acre-feet and covering many hundred of acres of land. This corporation was not originally made a defendant, but joined in the answer and set up its alleged rights. After the evidence was taken it filed a disclaimer and prayed for costs, which claim was sustained as plain-

tiffs assert erroneously. Van Graft defaulted. The defendants have used only a small amount of water from any of these creeks.

REVERSED AND REMANDED.

For appellants there was a brief over the names of *Mr. Edward F. Treadwell* and *Mr. John L. Rand.*

For respondents no brief was filed.

BEAN, J.—These suits are here for the purpose of a trial *de novo.* After reading about 900 pages of typewritten testimony, we are thoroughly convinced that an accurate decree determining the water rights in question cannot be predicated upon the record. It also appears that there are other claims to a portion of the water involved, made by persons who are not parties to this suit. Any decree that might be rendered would probably affect the rights of at least one person, not a party to either of these suits. A final adjudication of the water in the streams in question should be made so that there could be a practical administration thereof, which we do not think can be accomplished at this time. The measurements of the streams taken by the different parties were taken at different times and places, and are conflicting and unsatisfactory. The topography of the country is somewhat peculiar to that locality. Impartial measurements of the water in the streams, and an examination of the land should be made before the matter is finally determined. This can best be accomplished by transferring the suits to the water board for determination under the provisions of Sections 5731 et seq., Or. L. Section 5731 provides in part:

"In case suit is brought in the Circuit Court for the determination of rights to the use of water, the

case may, in the discretion of the court, be transferred to the board of control for determination as in this act provided."

Authority for the procedure indicated is found in *Oregon Lumber Co.* v. *East Fork Irr. Dist.,* 80 Or. 568 (157 Pac. 963). Precedent for bringing in all of the parties interested is also noticed in the case of *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728), as indicated by the first syllabus, which reads:

"Where, in a suit to determine water rights in a stream for irrigation purposes, the determination of the rights of the litigants could not otherwise have been had with reasonable accuracy, nor the decree, when entered, effectively enforced, without the presence of other parties, the court was authorized to direct that they be brought in and made parties, under Sections 41, 394, B. & C. Comp. (Sections 41 and 394, Or. L.), providing that, when complete determination of a controversy cannot be had without the presence of other parties, the court shall cause them to be brought in."

Uniformity and a practical administration of the Water Code of this state necessitate adjudication of water rights like those upon the streams in question by the water board, to the end that the decrees may be enforced and the laws administered as contemplated by the statute. Had an application to the water board been made at a much earlier date for a determination of the water rights of the several streams mentioned, it would have been a saving of time, labor and expense. In view of the condition of the record, we have concluded to exercise the prerogative of reversal of the decree in these suits, with a direction for a new trial: Section 557, Or. L. The suits will be remanded to the Circuit Court with directions to transfer the same to the state water

board for determination, treating the complaints as petitions for that purpose. The several parties should have leave to apply to the Circuit Court to amend their pleadings, if they so desire, in order to conform to the system of litigation provided by the Water Code. The parties to these suits will each be required to pay their own costs and disbursements thus far incurred without regard to the final determination of the suits.

The decree of the Circuit Court is reversed and the causes remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.